Horace E. Lindsey

*v.*

Eanos Hunt, Jr., d/b/a Hunt Construction
Company, et al.

384 S.W.2d 441.

387 S.W.2d 344.

(*Knoxville*, September Term, 1964.)

Opinion filed November 12, 1964.

Petition for Rehearing Denied December 11, 1964.

Second Petition for Rehearing Denied March 4, 1965.

JAMES R. WEEMS, Knoxville, for appellant.

TAYLOR & INMAN, Morristown, for appellees.

Mr. Chief Justice Burnett delivered the opinion of the Court.

At issue in this case are Sections 50-1006 and 50-1025, T.C.A., their interpretation and applicability to the facts herein, and the effects of cases decided thereunder upon these facts.

This case arose out of an accidental injury suffered by the plaintiff, now deceased, while working for the defendant, Hunt Construction Company, as a plumber. The plaintiff was to work for Hunt for a fixed price of $650.00 which was based upon the average hourly wage received by him, which was $2.00 per hour.

While in the employ of the defendant, Hunt, the plaintiff slipped or lost his balance when a loose board on which he was walking gave way causing him to fall some distance to the ground. The board on which he was walking was used by the employees as a walk way and had been placed there for that purpose. As a result of the fall the plaintiff sustained a fractured right wrist and other less serious injuries which made it necessary for him to be taken to the hospital for treatment and necessitated a stay in the hospital of two days. His injuries caused the plaintiff to be temporarily totally disabled and also caused him to suffer a partial permanent disability to his wrist and arm.

There seems to have been some dispute as to whether he was an employee or an independent contractor, but that issue was resolved and no question upon it is raised on this appeal. At the insistence of the defendant employer and its compensation carrier the plaintiff entered into a lump sum settlement of his claim as provided for under sec. 50-1006, T.C.A. By the terms of this settlement the plaintiff received $1,692.50 which included all hospital and doctor bills in addition to $1,500.00 in compensation for all of the plaintiff's disability, temporary and permanent. This settlement was approved by the Jefferson County Chancellor, in a hearing in his chambers, in accordance with the provisions of sec. 50-1006, T.C.A., and was signed thereafter by the plaintiff who, at and prior to that time, was without the benefit of counsel.

Following the settlement the plaintiff returned to work but continued to suffer with back pains which later markedly reduced his capacity to work. He then consulted a private physican who was of the opinion that the trou-

ble with the plaintiff's back was the result of active spinal arthritis which was accelerated in its development by the fall and which would ultimately result in the plaintiff's total permanent disability. After this information was disclosed to him, the plaintiff obtained counsel and petitioned the Chancellor for a rehearing in the matter. The Chancellor was of the opinion that the matter was closed by the lump sum settlement and the lapse of more than thirty days following the receipt of the records by the labor department. It is well to note here that the settlement agreement relied upon by the Chancellor and the defense made no mention of the plaintiff's back or of the percentage of partial permanent disability for which he was being compensated.

Section 50-1006 of the Code provides that the settlement agreements between the parties to a Workmen's Compensation action must be approved by the court before they are effective. This means that the prospective agreement must be submitted to a Judge of the Circuit, Chancery or Criminal Court of the county in which the agreement is entitled to be made, then the judge reviews the provisions therein and determines if the provisions of the law for the protection of the workman have been substantially complied with. The language of the statute would seem to support the action of the parties in this case because the agreement was submitted to the Chancellor for approval and that approval was given before the parties signed the settlement. This Section also provides that the judge in his discretion may review the settlement upon the petition of the employee or the superintendent of the division of Workmen's Compensation of the department of labor, within thirty days of the receipt of the papers and records by the labor

department. In the present case the thirty day period had elapsed.

Section 50-1025 of the Code provides, insofar as it is applicable here, that the lump sum settlement agreements are final and that only awards payable for more than six months are allowed to be modified.

Leading cases in this State have said that the judgment in a Workmen's Compensation case are as final as in any other type of case and that unless the petitioner was seeking to bring himself within the provisions of sec. 50-1025, T.C.A., he was barred by the prior final determination of the case. *Nelson v. Cambria Coal Co.,* 178 Tenn. 389, 158 S.W.2d 717, 160 S.W.2d 412, 165 A.L.R. 1; *American Snuff Co. v. Helms,* 201 Tenn. 622, 301 S.W.2d 348; *Leaver v. Rudy Sausage Co.,* 206 Tenn. 313, 333 S.W.2d 555.

In each of the preceding cases the Court was confronted with an award based upon an amount of disability determined in a law suit under the Compensation Act. In those cases, then, the party claiming had the benefit of his day in court with the aid of counsel where he called witnesses and put on the best possible case.

██ These situations present quite a contrast to the situation facing us now. The plaintiff had no attorney, he was asked to agree to a settlement which was drawn up by the defendants with the aid and representation of counsel and approved in a proceeding where he had no opportunity to present proof. Under circumstances such as these, the highest degree of care should be used by the reviewing judge to make sure that the rights of the employee are being upheld under the Compensation Law. There is more than the welfare of the worker at stake

in this respect, because the public also has a vested interest in the fair administration of the Compensation Laws.

"* * * the entire compensation system has been set up and paid for, not by the parties, but by the public. The public has ultimately borne the cost of compensation protection in the price of the product, and it has done so for the specific purpose of avoiding having the disabled victims of industry thrown on private charity or local relief. To this end, the public has enacted into law a scale of benefits which will forestall such destitution. It follows, then, that the employer and employee have no private right to thwart this objective by agreeing between them on a disposition of the claim that may, by giving the workman less than this amount, make him a potential public burden." Larson's Workmen's Compensation Law, sec. 82.41, p. 343, Vol. 2.

The recognition of this need to protect the public as well as the employee is evidenced at least impliedly in sec. 50-1006, T.C.A., in the thirty days discretionary review clause and in sec. 50-1025, T.C.A., in the provision for modification of awards payable for more than six months and in the basic provision of sec. 50-1006, T.C.A., that all lump sum settlements must be approved by a judge.

The settlement provision now before us contained no statement of the percentage of disability that was being compensated; only the amount agreed upon in settlement. In no case should the department of labor, division of Workmen's Compensation, have to resort to conjecture and speculation in their efforts to review a settlement agreement if necessary. Therefore, the degree or per cent of disability compensated must be included in these agreements.

■ All Workmen's Compensation claims are to be settled within the terms of the Act, that is, within the schedule of disability compensation provided in sec. 50-1007, T.C.A., even if these claims are settled in the manner provided in sec. 50-1006, T.C.A. It is only in this manner that the over-riding public interest in the welfare and financial security of the disabled workers can be served.

■ In a Workmen's Compensation action, the Supreme Court must accept the most favorable view of the claim on behalf of the claimant. In so doing, we will look at the present case in the light of the facts and decision in *Central Franklin Process Co. v. Gann,* 175 Tenn. 267, 133 S.W.2d 503. In that case the petitioner fell at her place of employment sustaining a fracture of the wrist and other injuries. The compensation carrier urged that she enter into a settlement agreement but she at first declined, claiming a painful back injury in addition to the broken wrist. After assurances from a doctor, the claimant agreed to the settlement which was approved by the Circuit Judge. Later, after the expiration of thirty days, and the payment of the agreed upon sum by the insurance company, the claimant petitioned the court for a writ of error *coram nobis,* alleging that the fall accelerated the development of spinal arthritis which had led to her permanent total disability. The insurance company and the employer defended on the basis that the issue was finally determined under sec. 50-1025, T.C.A. The granting of the writ of error was sustained by this Court.

■ Before us now we have essentially the same facts and issues as did the Court in the Gann case with the exception that in the Gann case the settlement agreement set forth the degree of disability compensated leaving the

sole issue the constructive fraud on the claimant due to the failure of the parties to consider her back injury.

Note that in addition to the allegation on the part of the plaintiff herein that his back injury was overlooked, there is no statement in the settlement concerning the percentage of disability it compensates.

Therefore, on the basis of the public and statutory policy favoring the settlement of all claims for Workmen's Compensation within the scope of the Act, and the fact that the possibility exists that the back injury of the plaintiff arose out of the accident in question, we will grant the writ of error prayed for by the plaintiff's attorney. Also, because the plaintiff in the Chancery Court below is now deceased, we order the appointment of a guardian ad litem for his minor daughter and the consolidation of this case with any cause of action accruing to the said minor daughter or to his son who has reached majority. Accordingly this case is reversed and remanded with instructions to try it in accordance with this opinion.

On Petition to Rehear

The respondents in this case have filed a forceful and dignified petition to rehear, wherein they make the following contentions:

(1) That these Workmen's Compensation cases often present hard questions of law and fact and that settlements are often reached upon consideration of whether the claimant can sustain his position on these requisites rather than upon the question as to the extent and nature of disability.

(2) For this objection the following quotation is self-explanatory: "If grave doubt exists as to whether any compensation is payable and if this reasonably

appears to the court, then why may not the parties compromise this issue and let it be a consideration for a reduction of the amount that might otherwise be due if there were no questions as to liability? We believe that the court may judicially notice that this is a common practice and that such practice materially reduces the number of compensation cases that are litigated.''

(3) That the opinion in *Central Franklin Process Co. v. Gann,* 175 Tenn. 267, 133 S.W.2d 503, is construed to stand only for the proposition that fraud is the basis for this Court's reversal of a settlement agreement and that this sole interpretation places the respondents in a bad light.

(4) That upon retrial the issue should be fully litigated and that the respondents should be placed in *status quo* pending the outcome of this matter.

In dealing with issues (1) and (2), above, it is well to note *Mangrum v. Aetna Life Ins. Co.,* 153 Tenn. 209, 280 S.W. 1011. In that case the liability of the company for the death of the deceased under Workmen's Compensation was conceded but a controversy arose as to the correct amount to be paid. A settlement had been entered into between the insurance company and the widow, which, it is shown, gave more to the widow than the amount authorized by statute. This settlement was approved by the Judge of the Circuit Court wherein it was entitled to be litigated as provided by Section 27, Chapter 123 of the Acts of 1919 (this statute with a slight modification has become sec. 50-1006, T.C.A., the interpretation of which was an issue in the first hearing on this matter now before us). The widow argued that it was permissible to give more than authorized by the statute in the settlement because of the public policy in favor of the

worker. This Court in answer to this contention set forth an unreserved statement of policy for this State to use in the application of the settlement provisions of the Workmen's Compensation Act in this language:

"* * * the spirit of the act * * is to award compensation as specifically provided therein; that is, for a certain injury award the sum which the act provides for that injury.

"We agree with counsel that one of the objects of section 27 was to protect claimants from fraud and imposition, but a further object was to see that the act was administered according to its terms and conditions, so as to do justice between the parties, under the law, just as in any other case.

"It was not contemplated by the act that a sum either greater or less than that provided therein should be approved and decreed by the court; but, where the act provides a specified sum for a particular injury, that sum only should be awarded claimant." *Mangrum v. Aetna Life Ins. Co.*, supra, at page 212, 280 S.W. at page 1012.

This language is backed by the majority view in the United States as expressed in Larson's Workmen's Compensation, Vol. 2, sec. 82.00 and sec. 82.31, thus:

"The vast majority of compensation claims are disposed of by agreement, without contest either as to the administrative or at the judicial level. As to both uncontested and contested claims, the majority rule forbids agreements by which the claimant gets less than the amount specified in the statute; * * *"

"* * * the majority rule appears to be that a claimant cannot validly agree to take less compensation than that specified by the statute."

█ Lump sum settlements when authorized by the statute are not compromise settlements in the usual sense of the word. They do not assume concessions and adjustments in the amount of payment because of the existence of a disputed issue. *Southern v. Dept. of Labor & Industries,* 39 Wash.2d 475, 236 P.2d 548.

█ Thus the majority rule in Tennessee forbids settlements which thwart the purpose of the Compensation Act, and therefore the courts of this State must exercise all due care to see that these purposes and objectives are not compromised or overlooked, no matter how sincere the efforts of the parties may be. Any encroachment, no matter how subtle, can lead to the destruction of the sound principles of the Workmen's Compensation laws and therefore must be avoided. It is for this reason that this Court, in its opinion in the first consideration of this matter, held that the Chancellor, and all judges generally who consider settlements, should be required to set forth the amount of disability compensated or some guide line by which the fairness of the settlement may be judged.

█ In the case before us the agreement was devoid of any criteria by which this Court, or any other reviewer of the settlement, could judge the fairness of the settlement. This is, of course, not to say that settlements are not favored under the laws of this State for they are; rather it is to say that these settlements must be fair and they must be made to seem so to any person giving them critical scrutiny.

█ With regard to objection number (3), above, the decision in *Central Franklin Process Co. v. Gann,* supra, stands not only for the proposition that a settlement procured by fraud may be overturned by this Court, but also for the proposition that a settlement arrived at through a mistake of fact is subject to like action. In no way was it intended that anything other than a general statement of the law of this jurisdiction be inferred from the citing of this case, which is in point, at least insofar as a mistake of fact is concerned. This application of the holding of that case was opened, in part at least, by the fact that the judicially approved settlement in the present case was silent as to the material matters of Workmen's Compensation awards, namely the nature, extent, and permanence of the disability compensated.

The matter is remanded to the lower court again for all action not inconsistent with this opinion, which includes a resettlement, the form of which meets the requirements of the laws of this State; or a trial on the merits as if the case had never arisen if a settlement cannot be reached. This in effect means that this matter must be considered anew due to the deficient form of the previous settlement agreement and the objections raised to it.

If, after review by the parties in the presence of the Chancellor, the existing agreement does not satisfy them, and the matter must be re-tried, then under *Gibbons v. Mutual Benefit Health & Acc. Ass'n,* 195 Tenn. 339, 259 S.W.2d 653, and authorities cited therein, the complainant must place the parties in *status quo* by returning the amount of the original award.

The matter has been well presented, and, after mature reflection and an independent investigation, we have

arrived at the conclusions herein expressed. The petition to rehear must be overruled subject to what is said herein.

## On Second Petition to Rehear

This is the second petition to rehear filed in this case and the first to be filed on behalf of the petitioner, Lindsey. In this petition the heirs of Lindsey urge that it was error for this Court to order the parties to be placed in *status quo* by the return of the consideration paid to the petitioner in the original settlement agreement which is objected to by the petitioner's heirs. In support of its contention the petitioner relies upon TCA sec. 23-3002, which reads:

"*Rescission of fraudulent or erroneous settlements.*
—Where a compromise settlement of a claim for damages resulting from personal injuries has been brought about by fraud or mistake, such settlement may be rescinded without return of the consideration to the party released, but such consideration paid shall constitute a credit to apply in satisfaction of any judgment procured on account of such personal injuries."

It is well to point out that this Section of the Code applies to the settlement of tort cases and not specifically to the field of Workmen's Compensation. This distinction is important because the law of Workmen's Compensation is unique, combining elements of several other types of law without being a part of any of these separate elements. This combination of elements, idea or concept in Workmen's Compensation is demonstrated by the following selections from a review of this subject in the opening sections of Larson's work on Workmen's Compensation.

"The right to compensation benefits depends on one simple test: Was there a work connected injury?

Negligence and, for the most part, fault are not in issue and cannot affect the result."

"Thus, the test is not the relation of an individual's personal quality (fault) to an event, but the relationship of an event to an employment. The essence of applying the test is not a matter of assessing blame, but of making out boundaries." Larson, Workmen's Compensation, sec. 2.10 and sec. 2.20.

From the foregoing we see a distinction between compensation and tort law. In the tort law there usually is some damage caused by the fault or negligence of another party; but, in Workmen's Compensation, there is usually no placing of blame and no requirement of showing negligence. Larson summarizes that the tort litigation is an adversary contest for the purpose of righting a wrong; but that Workmen's Compensation is a system which is not in the nature of an adversary contest. Rather it gives the injured workers some measure of security and distributes the cost of the program to consumers through the cost of the finished product. Larson's Workmen's Compensation, sec. 2.70.

It is only natural for the American lawyer, versed as he is in the law of torts, to think of all compensable situations in terms of tort; but this, according to Larson is error. When speaking again of the ingredients of Workmen's Compensation laws he says:

"The sum total of these ingredients is a unique system which is neither a branch of tort law nor social insurance of the British or Continental type, but which has some of the characteristics of each."

"Almost every major error that can be observed in the development of compensation law, whether judicial

or legislative, can be traced either to the importation of tort ideas, or less frequently, to the assumption that the right to compensation resembles the right to the proceeds of a personal insurance policy." Larson, Workmen's Compensation, sec. 1.20.

In this case we are not dealing with any assumptions as to the status of the deceased worker, as that is a matter for lower court determination. Therefore, we are not in a position to indulge in speculation as to what the outcome of this case would be if the deceased were an independent contractor instead of an employee. All that could be done was done in this case and that was to look at this matter in the light of the Tennessee Workmen's Compensation statutes and applicable case law and decide the matter accordingly. It would be error for this Court to attempt to apply, by analogy, a tort law statute to a compensation situation for that would only result in the intermingling of two distinct areas of the law. Also, as mentioned by counsel for the plaintiffs, there are no cases found applying this reasoning to the Workmen's Compensation area. Basically, the compensation laws are creatures of the Legislature, and any changes in their already valid structure should come from the Legislature and not the courts.

It was held in 1953 in *Gibbons v. Mutual Ben. Health & Accident Ass'n,* 195 Tenn. 339, 259 S.W.2d 653, that the one who seeks to avoid a settlement on the grounds that it was procured by fraud or mistake must, as a condition precedent to such an action, tender back the consideration originally paid to them. This case was modified by the Legislature in TCA sec. 23-3002, as cited and quoted here; but this modification was only in part. Section 23-3002 is located in Chapter 30 of the Code,

entitled "Torts Generally" and has no express or implied application to the field of Workmen's Compensation law. Since Workmen's Compensation law is the primary domain of the Legislature so long as the enactments are valid, and since the best interests of compensation for workers will be served by restraining the mingling of tort and compensation law, since the two are distinct areas of regulation; and since the Legislature has evidenced no intention to apply TCA sec. 23-3002 to the Workmen's Compensation cases, we must treat the old rule as still in effect in that area. A statement of this rule is to be found in 101 C.J.S. Workmen's Compensation sec. 835, as follows:

"Where, under the workmen's compensation act, compensation is lawfully paid to the one entitled thereto by the terms of the award, the recipient cannot be required to pay it back, but recovery is allowed where the compensation award was void or was secured through fraudulent misrepresentation."

In 58 Am.Jur., Workmen's Compensation sec. 395, we find:

"According to some authorities, a voluntary settlement or release of a claim for compensation cannot be avoided or set aside without a return or tender of the consideration paid therefor; * * *."

Although the basic rule has been quoted and it is the majority rule in the United States, there is still a conflict in requirements of tender as a prerequisite to rescinding a settlement. This conflict has inter and intra state aspects. That is, there are conflicting rules from state to state and even conflicts within various states. Thus in Texas, for example, there are cases holding both ways on

the question depending on the circumstances. 134 A.L.R. 107.

The area of Workmen's Compensation is a vital and much used one and it is to the benefit of this State that as much stability as possible exist in these proceedings. Therefore, since the Legislature of this State chose to apply TCA sec. 23-3002 only to tort cases and since there is a need for stability in the compensation law and since there is an absence of a clear majority rule in favor of non tender of payment in settlement rescission cases it would seem advisable not to intermingle tort and Workmen's Compensation law. In absence of a definitive legislative enactment on the subject, the firmly established rule requiring tender of consideration prior to avoidance of a settlement void because of mistake of fact or fraud should still prevail in the compensation cases of this State. As a result, the rule of the Gibbons case is still applicable to Workmen's Compensation cases but not to tort cases due to TCA sec. 23-3002.

The petition to rehear is denied.